# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-99-00670-CR
===============

**Frank Whitfield, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

=================================================================

**FROM THE DISTRICT COURT OF HARRIS COUNTY, 230TH JUDICIAL DISTRICT
NO. 793-997, HONORABLE BELINDA HILL, JUDGE PRESIDING**

=================================================================

This is an appeal from a conviction for burglary of a habitation with the intent to commit theft. *See* Tex. Penal Code Ann. § 30.02(a)(1) (West Supp. 2000). The jury found appellant Frank Whitfield, Jr. guilty of the offense charged and that appellant had been previously convicted of two felonies as alleged. The jury assessed appellant's punishment at imprisonment for thirty-seven years.

### POINTS OF ERROR

Appellant advances four separate points of error. In the first two points, appellant contends that the evidence is both factually and legally insufficient to support the jury's finding of "true" to an enhancement paragraph of the indictment. In the last two points, appellant challenges both the factual and legal sufficiency of the evidence to sustain the primary conviction because "the State failed to prove that appellant entered the habitation." We will affirm.

**FACTS**

James Lomax was the occupant of downstairs apartment no. 1105 in the Woodscape apartment complex at 9707 South Gessner in Houston. On September 27, 1998, Lomax was out of town when his habitation was broken into and certain items were taken. Upon his return, Lomax found that a black golf bag, an alarm clock, a backgammon game, a VCR and the remote, a bridge computer game, rare collectible coins, a pocket watch and chain, and a .22 caliber rifle and a rifle bag were all missing. Lomax stated that he had never given consent to appellant to enter his apartment or take any of the missing items.

About 7:00 or 7:30 p.m. on the evening in question, Kevin Shorter was asleep in his upstairs apartment no. 1106 of the Woodscape apartment complex. He was awakened by a banging noise. Looking out of his second story window, he saw two bald-headed men, one tall and the other short. The two men went underneath Shorter's balcony patio. Shorter opened the door to his patio and looked down through the cracks in the flooring. A light was shining on the heads of the two men below. Shorter had a clear view of their faces as the two men glanced around. Shorter was able to later identify the taller man as appellant and the shorter man as Herman Williams.

Shorter saw appellant and Williams "jimmying" the patio door to the Lomax apartment below with some type of tool. Shorter heard the screen door slide back and saw both pairs of feet go into the Lomax apartment. Shortly thereafter, Shorter heard a noise coming from Lomax's front door. Looking out the peephole in his own front door, Shorter saw Herman Williams walking into the parking lot and then heard the noise of Lomax's front door being locked from the inside. Shorter went back to his patio and saw appellant running down the back of the apartments. From his stairs,

Shorter observed appellant run to the corner and kneel down between the hedges with a black bag in his hand. After appearing to look at Williams coming back through the parking lot, appellant ran into another downstairs apartment, later shown to be apartment no. 1115. Williams also entered this apartment. While Shorter was observing these events, he was on his cordless telephone talking with the police.

Shortly thereafter, armed security guard Gerald Cadori arrived on the scene and was told by Shorter where the two men were located. Suddenly, appellant came running out of apartment no. 1115 and was ordered to the ground by Cadori. Shorter immediately identified appellant as one of the men he had seen.

About this time, Houston police officers arrived and were admitted into apartment no. 1115 by Marsella Swopes. Williams was found inside. With Swopes's consent, the police searched the apartment. Officer Jeff Noble discovered a black bag underneath a crib in the back bedroom. Shorter identified this bag as the one appellant was holding when appellant was hiding by the bushes. Rare coins and other items were found inside the bag. Officers also found a .22 caliber rifle and ammunition on the ground by the bushes outside.

Herman Williams testified for the State. He was an accomplice witness as a matter of law and the trial court so instructed the jury in its charge. Williams testified that he met appellant when they did odd jobs together—like "moving people." They were supposed to do a job on the date in question but did not. They went to apartment no. 1115 where appellant lived with Marsella Swopes. Later, they entered the Lomax apartment but Williams reported that he became scared and left via the front door. He subsequently admitted that he left the apartment to be a lookout at

appellant's request. When Williams saw appellant returning to apartment no. 1115, he also went to that apartment. Inside, Williams heard the sound of loose coins emanating from the kitchen where appellant was. He then saw appellant place a black bag in a crib in a bedroom. After appellant left the apartment to get cigarettes, Williams heard noises outside. He then awakened Swopes, who answered the door when the police knocked. Williams later entered into a plea bargain and received a three-year sentence for his participation in the offense.

## LEGAL SUFFICIENCY

In the third point of error, which we shall consider first, appellant challenges the legal sufficiency of the evidence to sustain his conviction.

In determining whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996); *Emery v. State*, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994).

The evidence, viewed in this light, and all reasonable inferences drawn therefrom are evaluated in this review. *See Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). A reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1996); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence cases. *See Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). Appellate courts measure the legal sufficiency of the evidence against a hypothetically correct

charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign, disregard, or weigh the evidence. *See Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury as the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given the testimony, and may accept or reject all or any of any witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Reconciliation of evidentiary conflicts is solely the function of the trier of fact. *See Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd); *Juarez v. State*, 796 S.W.2d 523, 524 (Tex. App.—San Antonio 1990, pet. ref'd).

Recognizing the above standard of review, appellant simply asserts without further argument that the State failed to prove that appellant entered the habitation of James Lomax or to corroborate the testimony of the accomplice witness, Herman Williams. Shorter saw appellant and Williams enter the Lomax apartment and saw appellant running from the apartment with a black bag shown to have belonged to Lomax and filled with Lomax's personal possessions. This evidence clearly corroborated Williams's testimony that he and appellant entered the Lomax apartment. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, all the essential elements of the offense charged. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The third point of error is overruled.

**FACTUAL SUFFICIENCY**

5

In his fourth point of error, appellant challenges the factual sufficiency of the evidence to sustain his conviction. A review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the judgment of conviction was *legally* sufficient. *See Clewis v. State,* 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In a challenge to the *factual* sufficiency of the evidence, we view the evidence without employing the prism of "in the light most favorable to the prosecution." *Id.* at 129; *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd untimely filed). A reviewing court must consider all the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or those facts. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The verdict is to be set aside only when the factual finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 129. In the factual sufficiency analysis, it must be remembered that the trier of fact is the sole judge of the weight and credibility of the testimony. *See Santellan,* 939 S.W.2d at 164. Appellate courts should be on guard not to substitute their own judgment in these matters for that of the trier of fact. *See id.* The reviewing court's evaluation should not substantially intrude upon the fact finder's role. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *see also Johnson v. State,* 23 S.W.3d 1, 8-9 (Tex. Crim. App. 2000). A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *See Cain v. State,* 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).

In support of his factual sufficiency argument, appellant again asserts that there is no evidence to show appellant entered the Lomax apartment and that Williams's testimony was not

corroborated as required by the court's charge. Appellant fails to point to any evidence in dispute. We have examined all the evidence impartially, and giving due deference to the jury's verdict, we conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The fourth point of error is overruled.

### PROOF OF IDENTITY—PRIOR CONVICTION

In his first two points of error, appellant contends that the evidence is factually and legally insufficient to prove one of the two prior Harris County convictions alleged for the enhancement of punishment. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2000). The indictment alleged that appellant had been previously convicted of the felony offense of burglary of a motor vehicle in the 338th District Court on October 3, 1989, in Cause No. 541316. The other prior conviction alleged was for the felony offense of attempted burglary of a habitation in the 180th District Court on December 30, 1992, in Cause No. 652769. Appellant does not challenge the proof of this 1992 conviction in Cause No. 652769, but urges that the State's proof failed to identify him as the person convicted in 1989 in Cause No. 541316.

Ronald Cherry, Harris County deputy sheriff, testified he was assigned to the Inmate Records Section of the sheriff's office where he was the custodian of the records. He identified State's Exhibit No. 29 as the original jail card record in Cause No. 541316, an offense involving a burglary of a motor vehicle. Deputy Sheriff R.L. Shield's qualifications as a fingerprint expert were established. Shield testified that he had taken appellant's fingerprints on the day Shield testified at the penalty stage of the trial. He related that appellant's known fingerprints, State's Exhibit No. 32a, matched the fingerprints on the jail card relating to Cause No. 541316—the burglary of a motor

7

vehicle conviction. He further related that appellant's known fingerprints matched the fingerprints in the pen packet in Cause No. 652769—the conviction for attempted burglary of a habitation. The State introduced the certified copy of the judgment and sentence in Cause No. 541316, and also had admitted into evidence, over objection, a certified copy of the pen packet in Cause No. 541316 as State's Exhibit No. 31. In this exhibit was a photograph of a Frank Whitfield along with his physical description and a set of fingerprints.[1]

The State has the burden of proving beyond a reasonable doubt a prior conviction alleged for the enhancement of punishment. *See Ex parte Augusta*, 639 S.W.2d 481, 484 (Tex. Crim. App. 1982), *overruled on other grounds*, *Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999). Proof that the defendant has the same name as the person previously convicted is not sufficient to satisfy the prosecution's burden. *See Bullard v. State*, 533 S.W.2d 812, 816 (Tex. Crim. App. 1976).

There are a number of means that may be used to prove prior convictions alleged for the enhancement of punishment. *See Littles v. State*, 726 S.W.2d 26, 31 (Tex. Crim. App. 1987) (op. on reh'g); *Beck v. State,* 719 S.W.2d 205, 209 (Tex. Crim. App. 1986). The approved methods of proof of identity set forth in various cases are certainly not exclusive and may often include the use of a combination of methods. *See Beck*, 719 S.W.2d at 210; 42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure*, § 38.89 at 668 (Texas Practice 1995) (hereinafter *Dix*).

A prior conviction may be established by certified copies of a judgment and sentence along with authenticated copies of a prison packet including, *inter alia,* fingerprints, supported by

---

[1] In argument, the prosecutor told the jury that the fingerprints on State's Exhibit No. 31 "aren't very good." This was apparently to explain why the State had not asked Shield about the fingerprints that are found in State's Exhibit No. 31.

expert testimony matching the prison packet's fingerprints to the known prints of the defendant. *See Beck,* 719 S.W.2d at 210; *Zimmer v. State,* 989 S.W.2d 48, 50 (Tex. App.—San Antonio 1998, pet. ref'd). This is currently the most popular method of proving prior convictions, but it is only one such method. The prosecution may employ other methods such as (1) offering the eyewitness testimony of a person who witnessed the prior conviction and identifies the defendant as the person previously convicted; (2) stipulations and the judicial admissions of a defendant; or (3) matching a photograph of the defendant in a prison packet or other official record to the defendant at trial. *See Zimmer*, 989 S.W.2d at 50 (citing *Littles*, 726 S.W.2d at 31).

In the instant case, certified copies of the judgment and sentence in cause No. 541316 were offered into evidence. The jail card relating to Cause No. 541316 bore the fingerprints of the defendant, Frank Whitfield, Jr. The card was admitted into evidence. The fingerprint expert stated that the card's prints matched the known fingerprints of appellant Frank Whitfield, Jr. In addition, the authenticated prison packet in cause No. 541316 was admitted into evidence containing a photograph of Frank Whitfield, Jr. and his physical description. *See Gollin v. State,* 554 S.W.2d 683, 686 (Tex. Crim. App. 1977). Identity can be proved by the trier of fact comparing the appearance of the defendant with a photograph associated with the prior conviction, even without a physical description accompanying the photograph. *See Littles*, 726 S.W.2d at 32; *Dix*, § 38.89 at 668 n.9.

Proof that an accused is the same person named in the alleged prior conviction can sometimes resemble "pieces of a jigsaw puzzle." *See Human v. State,* 749 S.W.2d 832, 835-36 (Tex. Crim. App. 1988). Proof, even though "unorthodox," may be sufficient. *See Littles,* 726 S.W.2d at 32.

This Court is to conduct a legal sufficiency review of an enhancement issue at the penalty stage of the trial under the standard of *Jackson,* 443 U.S. at 319; *cf. Barnes v. State,* 876 S.W.2d 316, 322 (Tex. Crim. App. 1994). We must view the evidence in the light most favorable to the jury's finding of "true" as to the prior conviction allegations concerning cause No. 541316. In doing so, we conclude that any rational trier of fact could have found the prior conviction allegations to be true beyond a reasonable doubt.

In reviewing the factual sufficiency of the evidence concerning the prior conviction in Cause No. 541316, we are not bound to view the evidence as to the prior conviction in the light most favorable to the jury's finding of "true," and may consider the testimony of the defense and the existence of alternative hypothesis. *See Clewis,* 922 S.W.2d at 134; *Stone,* 823 S.W.2d at 381. However, the jury's finding of "true" should not be set aside unless it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Stone,* 823 S.W.2d at 381. In this cause, the jury's finding of "true" is not so contrary to the evidence as to be set aside under the above described standard of review for factual sufficiency.

Appellant's first and second points are overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion[*]

Affirmed

Filed:   October 12, 2000

Do Not Publish